# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

VLADIMIR KATS        :
    *Plaintiff*,        :
       :     Civil Action No: 3:22-471
v.        :
       :
THE UNITED STATES OF AMERICA,    :
    *Defendant*.        :     March 31, 2022

## COMPLAINT

1.     Plaintiff, Vladimir Kats, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671- 2680, seeks damages from Defendant, the United States of America, for the extreme physical and emotional harm he suffered as a result of the conduct of the employees of the Federal Bureau of Prisons, an agency within the United States Department of Justice, while he was incarcerated at FCI-Danbury in Danbury, Connecticut.

## Parties, Jurisdiction and Venue

2.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States of America and is premised on the acts and omissions of the FBOP and its employees acting under color of federal law. This Court further has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) in that this is a claim against the United States for money damages, accruing after January 1, 1945, for personal injury

caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff.

3. Jurisdiction founded upon the federal law is proper in that this action is premised upon federal causes of action under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671, *et. seq*.

4. On or about September 10, 2020, the Plaintiff presented a claim to the appropriate federal agency for administrative settlement pursuant to the FTCA, 28 U.S.C. § 2671, *et. seq*. By letter dated November 16, 2020, the United States Department of Justice, Federal Bureau of Prisons, acknowledged receipt of an administrative tort claim for filing and named it Administrative Tort Claim TRT-NER-2021-00933.

5. On or about July 19, 2021, the Plaintiff presented a claim to the appropriate federal agency for administrative settlement pursuant to the FTCA, 28 U.S.C. § 2671, *et. seq*. By letter dated August 30, 2021, the United States Department of Justice, Federal Bureau of Prisons, acknowledged receipt of an administrative tort claim for filing and named it Administrative Tort Claim TRT-NER-2021-06938.

6. Although neither claim has yet been denied, more than six months has passed since the federal agency's receipt of the claims, and thus the claims are administratively exhausted.

7. This action is timely pursuant to 28 U.S.C. § 2401(b) in that it was presented to the appropriate federal agency within two years of accrual.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1402 because the acts or omissions complained of occurred in this judicial district.

9. Defendant, the United States of America, is subject to suit for personal injury caused by the negligent and wrongful acts and omissions of employees, agents, servants, and contractors of the United States while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff, pursuant to the FTCA.

10. At all times material to this action, Mr. Vladimir Kats was an inmate subject to the custody and control of the FBOP and subject to the care and treatment of the FBOP.

11. Defendant, the United States of America, had a legal duty to the Plaintiff as a prisoner in its care and custody, to provide for the protection of Plaintiff as an inmate, his safety, and his security.

## GENERAL ALLEGATIONS

### Plaintiff is Sexually Assaulted

### (TRT-NER-2021-06938)

12. On or about November 24 or 25, 2019, at some time after midnight, an inmate, Leonard Wood, brandished a shank and threatened to kill Plaintiff if he made a sound.

13. He ordered Plaintiff to "get on the floor" on his stomach while holding the shank inches from his face.

14. He threw a towel on Plaintiff, wrapped it around Plaintiff's head, and pulled Plaintiff's shorts off and put his weight on Plaintiff.

15. He again whispered he would kill Plaintiff if he made noise.

16. He then forced his penis into Plaintiff's rectum and raped Plaintiff.

17. When he was done, he left, and Plaintiff made himself a toilet paper compress. Plaintiff was bleeding. To this day, Plaintiff bleeds from his rectum as a result of this incident.

18. There were no officers in the unit that night.

19. At all times relevant to this complaint and for a long time prior, this staffing situation was typical at FCI-Danbury, especially in November 2019 at Danbury-FCI in H-Unit where Plaintiff lived.

20. At all times relevant to this complaint and for some time prior, inmates put up "tents" hanging on the sides of their beds after the 9pm count, so that no one could see what they are doing within the "tents." This was permitted despite the safety risk that it created.

21. Wood returned to Plaintiff and told him that if he ratted, he or his friends would kill Plaintiff, even if he was in the SHU.

**FBOP Had Knowledge of Danger to Plaintiff Prior to the Assault**

22. For several weeks prior to the sexual assault, Wood was threatening Plaintiff and making sexual comments, like "Who's your daddy?"

23. Plaintiff went to see Counselor Hornkohl with a witness, another inmate, asking the Counselor to move Plaintiff to another unit because he was being threatened by Wood.

24. Counselor Hornkohl refused to move Plaintiff, despite her knowledge of the danger to the Plaintiff and the FBOP's duty to protect him..

25. Plaintiff asked Counselor Hornkohl and put her on notice of Wood's threatening behavior multiple times after her first refusal to move Plaintiff. She continued to refuse to take action to protect the Plaintiff, such as by moving him to a different housing unit.

**After the Sexual Assault, Plaintiff is Placed in Greater Danger**

**(TRT-NER-2021-00933)**

26. On or about November 25 or 26, 2019, Plaintiff again implored Counselor Hornkohl to move him from H-Unit. He explained that Wood was threatening him.

27. Yet, on November 27, Plaintiff was moved into the same bunk bed as Wood, the man who had assaulted Plaintiff.

28. Wood was enraged by Plaintiff being moved into his bunk bed, and began threatening Plaintiff immediately.

29. Plaintiff tried to seek out an officer for help, but—as usual—there were no officers in H-Unit.

30. There were no officers in the CO's office.

31. The dorm was locked, and Plaintiff could not get help.

32. Plaintiff tried to reason with Wood and tried to avoid conflict.

33. Wood palmed a metal lock, secured it with the loop around his finger, and struck him as hard as he could with his open hand, with the lock hidden in his palm.

34. Plaintiff nearly blacked out, but did not retaliate.

35. Instead, Plaintiff waited about five minutes for the ten-minute move, and then left the dorm when the door was unlocked.

36. Plaintiff then went to the Lieutenant's office, told them what happened, and they took pictures of the left side of Plaintiff's head where he was struck, then sent Plaintiff to the medical building.

**Instead of Treating Plaintiff, FBOP Throws Him in Solitary**

37. At the medical building, Plaintiff did not see a doctor.

38. Plaintiff was told, "of course you feel dizzy, you just got hit in the head," and then Plaintiff was thrown in the SHU (Special Housing Unit, or solitary confinement, or in prison parlance, "the hole").

39. While in the SHU, Plaintiff experienced extreme pain, dizziness, and nausea.

40. Suffering from an untreated concussion, Plaintiff retched and vomited throughout the night in the SHU.

41. Plaintiff also experienced a loss of hearing in his left ear, constant headaches, constant ringing in his left ear, and difficulty concentrating.

42. Plaintiff was kept in the SHU from about November 27, 2019 to January 8, 2020. During this time, he was denied medical treatment for his concussion.

43. For over 10 days, Plaintiff was denied a toothbrush.

44. Plaintiff was denied medical request forms. He was told the unit did not have them.

45.     On his 40th day in the SHU, a medical worker stopped by Plaintiff's cell, and told him he needed an X-ray. But nothing happened.

46.     On January 9, Plaintiff was released from the SHU, and saw a doctor for the first time since the assault.

47.     Upon information and belief, FBOP never produced an incident report for Wood's assault on Plaintiff.

## STATEMENT OF CLAIM

48.     The FBOP has in its employ correctional officers, counselors, and lieutenants, over which it exercises direct control and supervision. At all times material to this action, the FBOP authorized these agents and employees to act for the FBOP, and they were indeed acting as agents and employees, when they committed the grossly negligent acts alleged herein. The FBOP's agents and employees accepted the undertaking of acting on behalf of the FBOP when they committed the negligent acts alleged herein. The FBOP had control over its agents and employees when they committed the negligent acts alleged herein. The FBOP by way of its gross negligence empowered its employees to act with deliberate indifference repeatedly.

49.     The negligent acts of the FBOP's agents and employees were committed while acting within the course and scope of their employ with the FBOP.

50. At all times material to this action, the FBOP had a non-delegable duty to provide Mr. Kats with safety and security.

51. At all times material to this action, the FBOP, by and through supervisors, managers, wardens, medical staff, physicians, and nurses acting within the course and scope of their employment, undertook a duty to render medical care to Mr. Kats in a skillful and careful manner and in accordance with the accepted standards of medical care and treatment rendered in such cases by physicians in the same geographic region of treatment or in any similar medical community.

52. At all times material to this action, the FBOP, by and through its staff, physicians, nurses, and employees, acting within the course and scope of their employment and/or agency, negligently breached the duty of care owed to Mr. Kats, by failing to provide for his safety and security, allowing for him to be assaulted multiple times, then ignoring his medical needs by failing to provide him with medical treatment.

53. The care and treatment of Mr. Kats by the staff of the FBOP at FCI Danbury breached the duty of care owed to Mr. Kats in the following ways:

    a. Failure to remove Mr. Kats from the vicinity of Mr. Wood after he put staff on notice of specific threats to his safety and well-being;

b. Placing Mr. Kats in the immediate vicinity of Mr. Wood after he sexually assaulted Mr. Kats and staff were again put on notice of the immediate danger to Mr. Kats's safety and well-being;

c. Creating a dangerous environment where assaults on vulnerable inmates were permitted, by allowing inmates to put up "tents" at night around their beds that concealed dangerous activity, including assaults;

d. Failure to respond to Mr. Kats's reports of being assaulted by taking action to protect him from another assault;

e. Failure to provide Mr. Kats with any medical attention after his assaults;

f. Failing to recognize the life-threatening conditions within its housing units where vulnerable inmates were being assaulted, threatened, and bullied;

g. Putting Mr. Kats in the SHU instead of treating his urgent medical needs after he reported being assaulted;

h. Additional failures, acts of gross negligence, omissions, and deliberate indifference that will be uncovered during Plaintiff's ongoing investigation and the discovery process within this action.

54. As the direct and proximate result of the failure of the FBOP's negligent behavior, Mr. Kats has:

    a. Suffered extreme emotional distress and damages;

    b. Suffered excruciating conscious pain;

    c. Suffered a loss of enjoyment of life's activities;

    d. Suffered a loss of earning capacity; and

    e. Suffered a loss of dignity.

55. Mr. Wood's assaults on Mr. Kats could have been prevented. But instead, FBOP's grossly negligent behavior made assaults like Mr. Wood's assaults on Mr. Kats not just likely, but inevitable.

56. If the FBOP had mandated and facilitated proper procedures that were legally obligated to properly keep Mr. Kats safe, Mr. Kats would not have been assaulted, multiple times, in the excruciating manner that he was.

57. At all times material, Mr. Kats was in the care and custody of the FBOP, relegated to living in a cell that allowed the FBOP every opportunity to observe, treat, remedy and provide legally guaranteed services to him, services that were his basic human right. FBOP denied that basic human right. Instead, the FBOP and its employees consciously chose to inappropriately treat Mr. Kats, then simply watch his obvious suffering. This reckless and objectively deficient care constituted both negligence and deliberate indifference.

58.     As the direct and proximate result of the deliberate indifference, gross negligence, carelessness, and reckless acts and omissions of the FBOP and its employees, Mr. Kats suffered intensely.

**COUNT I – NEGLIGENCE AND GROSS NEGLIGENCE
AGAINST THE UNITED STATES OF AMERICA**

59.     Plaintiff adopts and re-alleges paragraphs 1 through 58 above and further alleges as follows:

60.     The United States, by and through the FBOP's employees, undertook a duty to keep Mr. Kats safe from clear and specific threats of danger to his safety and security.

61.     The United States, by and through the FBOP's employees, breached its duties in numerous ways as detailed above.

62.     The United States, by and through the FBOP and its employees, were grossly negligent in their failure to provide proper protection from harm to Mr. Kats, and in their failure to provide him with medical care following his being assaulted.

63.     The FBOP and its employees at numerous times exhibited deliberate indifference towards Mr. Kats by *inter alia* electing to not protect Plaintiff from Mr. Wood despite notice of the danger to him; electing to place Plaintiff into the vicinity of Mr. Wood after he was assaulted the first time; electing to take no substantive actions to properly treat Plaintiff's acute health issues as a result of the assaults; electing to place Plaintiff in the SHU instead of treating his medical conditions;

12

ignoring his severe medical condition; additional conduct described in this Amended Complaint above; and by likely participating in additional other grossly negligent acts, omissions and episodes of deliberate indifference about which the Plaintiff, despite the exercise of sustained diligence, has yet to uncover.

64. As a direct and proximate result of the gross negligence and deliberate indifference of the FBOP's staff, the United States, by and through the FBOP, caused the assaults on Mr. Kats.

WHEREFORE, Plaintiff is entitled to compensatory damages equal to $19,800,000, net of any setoffs or counterclaims, and any further relief that this court deems just and proper.

Dated: March 31, 2022          Respectfully submitted,

**Alexander T. Taubes**
470 James Street
Suite 007
New Haven, Connecticut 06513
Telephone: (203) 909-0048
alextt@gmail.com

By:

*/s/ Alexander T. Taubes*
Alexander Tiva Taubes, Esq.
Federal Bar No. ct30100