UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
VLADIMIR KATS,                                    :
                                                  :
                              Plaintiff,          :
                                                  :   **MEMORANDUM &**
       -against-                                  :   **ORDER**
                                                  :
UNITED STATES OF AMERICA,                         :   3:22-CV-471 (VDO)
                                                  :
                              Defendant.          :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Vladimir Kats brings this action against Defendant United States of America (the "Government"), alleging that he was injured due to negligence of Federal Bureau of Prisons ("BOP") employees during his time as an inmate at the Federal Correction Institution in Danbury, Connecticut ("FCI-Danbury"), pursuant to the Federal Tort Claims Acts, 28 U.S.C. §§ 2671 *et seq.* (the "FTCA").

On August 20, 2022, the Government moved to dismiss the complaint for failure to state a FTCA claim, arguing that Plaintiff does not adequately allege breach of a legal duty or causation of Plaintiff's injuries. (Def. Mot., ECF No. 17.) Plaintiff opposed the Government's motion on September 12, 2022. (Pl. Opp'n., ECF No. 18.) For the reasons set forth below, the Government's motion to dismiss the complaint for failure to state a FTCA claim is **denied**.

**I.      BACKGROUND**

The Court assumes the truth of the factual allegations in the complaint for the purpose of resolving the Government's motion.

Plaintiff was an inmate at FCI-Danbury. (Compl., ECF No. 1 ¶ 1.) While Plaintiff was incarcerated, inmates at FCI-Danbury were permitted to (and did) put up "tents" hanging on

the sides of their beds after the 9pm count, so that no one could see what they were doing within the "tents." (*Id.* ¶ 20.) In November 2019, at some time after midnight, Plaintiff was sexually assaulted by another inmate named Leonard Wood. (*Id.* ¶¶ 12–16.) There were no officers in the unit during the night of the sexual assault. (*Id.* ¶ 18.) To this day, Plaintiff bleeds from his rectum as a result of this incident. (*Id.* ¶ 17.)

Prior to the sexual assault, BOP personnel knew of a specific threat to Plaintiff's health and safety. For several weeks prior to the sexual assault, Mr. Wood threatened Plaintiff and made sexual comments like "Who's your daddy?" (*Id.* ¶ 22.) The threats prompted Plaintiff to, with a corroborating witness, ask a correction counselor (Counselor Hornkohl) to be moved to another unit. (*Id.* ¶ 23.) Counselor Hornkohl refused to moved Plaintiff to another unit. (*Id.* ¶ 24.) Even after Plaintiff repeatedly notified her of Mr. Wood's threatening behavior, Counselor Hornkhol failed to act in response to those complaints. (*Id.* ¶ 25.)

BOP personnel continued to receive red flags after Plaintiff's sexual assault. About a day after being sexually assaulted, Plaintiff again implored Counselor Hornkohl to move him from H-Unit, explaining that Mr. Wood was threatening him. (*Id.* ¶ 26.) Plaintiff was then moved into the same bunk bed as Mr. Wood, who began threatening Plaintiff immediately. (*Id.* ¶¶ 27–28.) Plaintiff tried to seek out an officer for help but, again, there were no officers in H-Unit. (*Id.* ¶ 29.) The dorm was locked. (*Id.* ¶ 31.) Mr. Wood then struck Plaintiff in the head with a lock hidden in his palm, causing Plaintiff to nearly black out. (*Id.* ¶¶ 33–34.) After five minutes, when the door was unlocked, Plaintiff went to the Lieutenant's office to let them know what happened. (*Id.* ¶¶ 35–36.) Plaintiff then went to the medical building but did not see a doctor. (*Id.* ¶ 37.)

Instead of immediately treating his injuries, BOP personnel placed Plaintiff in the Special Housing Unit ("SHU"). Plaintiff was kept in the SHU from about November 27, 2019 to January 8, 2020. (*Id.* ¶ 42.) Plaintiff was denied medical treatment while in the SHU and suffered from an untreated concussion, which resulted in him experiencing a loss of hearing, constant headaches, constant ringing in his left ear, and difficulty concentrating. (*Id.* ¶¶ 40–42.) On January 9, 2020, Plaintiff was released from SHU and saw a doctor for the first time since the assault. (*Id.* ¶ 46.) The BOP never produced an incident report for Mr. Wood's assault on Plaintiff. (*Id.* ¶ 47.)

## II.   LEGAL STANDARD

### A.   Motions to Dismiss

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[T]he court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief." *Leonard v. Gen.*

*Motors L.L.C.*, 504 F. Supp. 3d 73, 83 (D. Conn. 2020). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal citation and quotation marks omitted).

    **B.**    **FTCA Claim**

Substantive Connecticut law governs a FTCA action where, as here, the acts alleged occurred in the state of Connecticut. *See Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021) (ruling that "state law will apply [in a FTCA action] only if it is substantive, rather than procedural"); *see also Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000) ("Under the FTCA, courts are bound to apply the law of the state (or here, the district) where the accident occurred."). The source of substantive liability under the FTCA is state law. *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).

"Negligence is the violation of a legal duty which one party owes to another." *Morgillo v. Empire Paving, Inc.*, No. CV075001769S, 2014 WL 1283223, at *3 (Conn. Super. Ct. Mar. 4, 2014), *aff'd*, 118 A.3d 760 (Conn. App. Ct. 2015). The essential elements of a cause of action in negligence under Connecticut law are duty, breach of that duty, causation, and actual injury. *Osborn v. City of Waterbury*, 220 A.3d 1, 6 (Conn. 2019); *see also Konspore v. United States*, No. 22-748-CV, 2023 WL 3184447, at *2 (2d Cir. May 2, 2023) (same).

## III. DISCUSSION

The Government seeks dismissal of Plaintiff's complaint because it contests that Plaintiff adequately alleged facts to show two elements of a cause of action in negligence: (1) breach of a legal duty; and (2) causation of Plaintiff's injuries.[1]

As explained below, the Court disagrees and finds that Plaintiff plausibly alleged a negligence claim for failing to protect Plaintiff from Mr. Wood. Because the Court concludes that Plaintiff has adequately alleged breach of a duty under the legal theory of failing to protect, it does not reach the alternative theories of liability. *See NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-CV-1023 (MPS), 2021 WL 3568892, at *16 (D. Conn. Aug. 11, 2021).

### A. Breach of Duty

The Government contends that it could not have breached any legal duty owed to Plaintiff as a result of failing to protect Plaintiff from another inmate because Plaintiff never alleged that he reported any incident where he was assaulted. (Def. Mem., ECF No. 17-1 at 7–9.) But this ignores that Plaintiff's negligence claim sweeps in multiples theories of how BOP personnel failed to exercise reasonable care.

Plaintiff alleges that the Government, through the BOP and its employees, were negligent in their failure to protect Plaintiff from harm from another inmate, and in their failure to provide him with medical care following him being assaulted. (Compl., ECF No. 1 ¶ 62.) According to Plaintiff, the care and treatment of Plaintiff by BOP staff breached a duty of care in at least the following ways:

---

[1] The Government acknowledges, as it must, that the BOP owes a duty of reasonable care to safeguard the security of prisoners under its control, and that the BOP must exercise reasonable care in protecting prisoners from harm. (Def. Mem., ECF No. 17-1 at 7 n.2.) The Government does not move to dismiss on the issue of whether Plaintiff plausibly alleged actual injury.

5

    a. Failure to remove [Plaintiff] from the vicinity of Mr. Wood after he put staff on notice of specific threats to his safety and well-being;

    b. Placing [Plaintiff] in the immediate vicinity of Mr. Wood after he sexually assaulted [Plaintiff] and staff were again put on notice of the immediate danger to [Plaintiff] safety and well-being;

    c. Creating a dangerous environment where assaults on vulnerable inmates were permitted, by allowing inmates to put up "tents" at night around their beds that concealed dangerous activity, including assaults;

    d. Failure to respond to [Plaintiff's] reports of being assaulted by taking action to protect him from another assault;

    e. Failure to provide [Plaintiff] with any medical attention after his assaults.

(*Id.* ¶ 53.) As explained below, the Court holds that Plaintiff has plausibly alleged at least one of these theories: that BOP staff breached the duty of care it owes to Plaintiff by failing to separate Mr. Wood from Plaintiff, despite Plaintiff repeatedly notifying the BOP of Mr. Wood's threatening behavior.

The BOP is obligated to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . . and provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a). The Government thus has a legal "duty of reasonable care to safeguard the security of prisoners under its control." *Owens v. Haas*, 601 F.2d 1242, 1249 (2d Cir. 1979); *see also United States v. Muniz*, 374 U.S. 150, 164–65 (1963) ("[T]he duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042[.]"). "[P]rison officials in the State of Connecticut are under a duty to protect prisoners from violence at the hands of other prisoners." *Dolbey v. State*, No. CV980333216S, 2000 WL 1269716, at *4 (Conn. Super. Ct. Aug. 24, 2000). "The Government breaches its duty of care if prison staff fails to keep two inmates separate even

6

though it knew or reasonably should have known of a potential problem between the two inmates." *Roque v. United States*, No. 3:09-CV-533 (JBA), 2012 WL 603271, at *4 (D. Conn. Feb. 24, 2012) (internal citation and quotation marks omitted). Ignoring a prisoner's "requests for help" where there are "specific, repeated, and urgent expressions of fear for his safety" is sufficient to show breach of a duty of care. *See Morgan v. Dzurenda*, 956 F.3d 84, 90 (2d Cir. 2020) (vacating summary judgment of no liability for failure to protect claim); *see also Rogers v. Salius*, No. 3:16-CV-1299 (JCH), 2017 WL 1370695, at *5 (D. Conn. Apr. 13, 2017) (denying dismissal of a failure to protect claim where there were allegations that a defendant failed to take action despite being aware of a threat to plaintiff's safety).

Here, there can be no question that Plaintiff alleges facts sufficient to show that BOP personnel knew of a potential problem between the inmates at issue and failed to separate them. Plaintiff alleges that, prior to the first assault, Plaintiff notified Counselor Hornkohl of Mr. Wood's threats to Plaintiff's safety and that the plea for help was ignored. (Compl., ECF No. 1 ¶¶ 23–25.) About a day later, prior to the second assault, Plaintiff again notified Counselor Hornkohl about Mr. Wood's threatening behavior and Counselor Hornkohl continued to ignore Plaintiff's requests for assistance. (*Id.* ¶¶ 26–27.) In fact, even after receiving notice of an assault, the BOP never produced an incident report. (*Id.* ¶ 47.) Allegations showing that the BOP disregarded numerous red flags, such as Plaintiff's urgent complaints regarding threats from an identified inmate, are sufficient to show breach of a duty of care. *See Rogers*, 2017 WL 1370695, at *5.

The Government cites cases in support of the proposition that dismissal is appropriate where an essential element of a claim is unsupported by any allegation of fact. *See Edwards v. McMillen Cap., LLC*, 574 F. Supp. 3d 52 (D. Conn. 2021) (granting dismissal of a negligence

claim where a complaint did not plausibly allege the existence of a duty of care based upon the mortgage agreement); *see also Moore v. City of Norwalk,* No. 3:17-CV-695 (JAM), 2018 WL 4568409 (D. Conn. Sept. 24, 2018) (granting dismissal of a *Monell* liability claim where a complaint fails to allege facts apart from legal conclusions). Inadequate factual allegations is determinative in a Rule 12(b)(6) challenge. However, the facts of those cases are distinguishable from the complaint at issue, which contains detailed allegations claiming that the Government breached a duty of care by failing to protect Plaintiff from violence at the hands of another inmate. Indeed, as alleged, BOP failed to respond to specific threats of danger to Plaintiff's well-being, about which he put them on notice.

Accordingly, the Court finds that Plaintiff has adequately pled breach of a legal duty.

**B.   Causation**

The Government also contends the complaint cannot sustain a negligence claim because Plaintiff fails to allege any facts to connect the "tents" to Plaintiff's injuries. (Def. Mem., ECF No. 17-1 at 9–11.) Attempting to demonstrate lack of causation, the Government argues that there are no facts in the complaint to suggest that a "tent" was present during the first assault, or that a staff member would have intervened but for a tent obscuring the attack. The Court disagrees.

The Court's issue with the Government's contention is that it rests on an apparent misreading of Plaintiff's complaint. Plaintiff alleges that BOP employees created a dangerous environment wherein assaults on vulnerable inmates were permitted by allowing inmates to put up "tents" at night around their beds that concealed dangerous activity, including assaults. (Compl., ECF No. 1 ¶ 53(c).)  While Plaintiff was incarcerated, inmates at FCI-Danbury were permitted to (and did) put up "tents" hanging on the sides of their beds after the 9pm count.

8

(*Id.* ¶ 20.) At some time after midnight (i.e., after the 9pm count), Mr. Wood assaulted Plaintiff for the first time. (*Id.* ¶¶ 12–16.)

Individually, the allegations related to the "tents" may not be enough to support a claim of negligence as "reasonable care to safeguard the security of prisoners does not include constant observation of the interior of each cell." *Roque*, 2012 WL 603271, at *5–6. But the essence of Plaintiff's claim is that the BOP should have taken reasonable measures to protect Plaintiff from violence at the hands of another inmate. The allegations of BOP personnel failing to separate Plaintiff from an inmate in conjunction with allowing inmates to construct "tents" are sufficient to plead causation.

"Causation in a negligence action has two components, both of which must be satisfied for the plaintiff to prevail." *Snell v. Norwalk Yellow Cab, Inc.*, 212 A.3d 646, 659 (Conn. 2019). "The first component, causation in fact, requires . . . determin[ing] whether the injury would have occurred but for the defendant's conduct." *Stuart v. Freiberg*, 116 A.3d 1195, 1210 (Conn. 2015). "The second component, proximate causation, requires . . . determin[ing] whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries." *Id.* "[T]o say that the defendant's conduct was not a substantial factor in producing an injury is simply another way of saying that the injury was not within the scope of the risk created by the defendant's conduct." *Snell*, 212 A.3d at 665.

Plaintiff has adequately pleaded facts to show the components of causation. According to the complaint, Plaintiff was again assaulted by Mr. Wood after BOP staff transferred Plaintiff to the same bunk as Mr. Wood, despite Plaintiff's warnings that Mr. Wood repeatedly threatened him. First, the injuries sustained during the second assault would not have occurred but for the BOP placing Plaintiff in the same bunk as Wood and locking the dorm. Mr. Wood

9

would not have had the opportunity to injure Plaintiff but for BOP personnel failing to separate these two inmates. Second, the BOP's conduct was a substantial factor in bringing about the plaintiff's injuries. Because the BOP was on notice of Plaintiff receiving multiple threats from Mr.Wood, it should have reasonably anticipated that Mr. Wood would assault Plaintiff. No steps were taken to separate Mr. Wood from Plaintiff, and days after Plaintiff complained about threats, Mr. Wood allegedly assaulted Plaintiff multiple times. It is foreseeable that an inmate who has threatened another inmate would actually commit harm. Therefore, it cannot be said, as a matter of law, that the injuries sustained by Plaintiff were not within the scope of the risk created by Defendant's conduct. *See Snell*, 212 A.3d at 665; *see also Douglas*, 2014 WL 2580687, at *2 (denying summary judgment and finding "whether the injuries sustained by the plaintiff were within the scope of foreseeable risk created by the defendant's allegedly negligent conduct").

Citing *Lewis v. Clark*, No. 3:14-CV-1592 (RNC), 2016 WL 1626814 (D. Conn. Apr. 22, 2016) and *Norman v. Bayer Corp.*, No. No. 3:16-CV-00253 (JAM), 2016 WL 4007547 (D. Conn. July 26, 2016), the Government claims dismissal is appropriate here because causation between the "tents" to Plaintiff's injuries is lacking. While these cases hold that a plaintiff must plead facts to show causation to advance a claim of negligence, they are factually distinguishable. These cases do not analyze the exact issue of whether a plaintiff has plausibly alleged causation between the BOP's actions and an inmate's injuries at the hands of another inmate. Thus, neither case stands for the proposition that dismissal is appropriate in the situation alleged here.

Accordingly, the Court finds that Plaintiff has adequately pled the element of causation.

## IV. CONCLUSION

For the reasons stated above, the Government's motion to dismiss Plaintiff's FTCA claim is **denied**. The Government shall file an answer to the complaint within **fourteen days** of this order. The Clerk of Court is respectfully directed to terminate the pending Motion (ECF No. 17).

**SO ORDERED.**

Hartford, Connecticut
November 30, 2023

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge